Our fourth case for today is United States v. Sheila Geary. Ms. Conner. Yes, good morning. Carrie Conner on behalf of Sheila Geary. We presented two issues to the court, both related to sentencing. The first is related to the court's imposition of the cross-reference for manufacturer production of child pornography under 2G2.2C1. The government relied on clips of a post-arrest statement of David Geary to argue to the court that they were going to be taken of their young child. And he also presented statements that suggested that when he showed her those pictures, she had a positive reaction to them, an affirmative reaction to them. He could not describe what that reaction was. He could not describe the words she used. But, in fact, he said at one point it wasn't negative. Ignore every piece of evidence supplied by David. Just wipe him out of this whole thing. We still have quite a bit of evidence that Sheila knew what was going on and permitted it to her. We have Sheila's own words stating that after seeing the photos in 2013, she did not tell him not to do it again, but rather she said, I just tried to change the subject. We have her concealing a thumb drive full of child pornography for four years. Tell me why this wasn't enough without a word from David, not one word, for the sentencing guideline to apply. Your Honor, because under 2G2.2, the cross-reference only applies when the individual is responsible for the manufacture or production of child pornography. She, of course, pled to possessing the child pornography during that time period. The government has not been able to provide us with a single case that would, in fact, accept what was the district court's conclusion that because Sheila did not protect her daughter better, because she did not call the police and the court actually used the word... and I know that it's happening and I do nothing. Have I allowed it to happen? Have I permitted it to happen? Well, in that example, if you're standing next to the child and you see the car coming and you see the child run out and you don't attempt to stop them, probably you've allowed that to happen. However, that isn't what 2G2.2c1, and the only thing that had to be found was that the offense involved permitting a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction. She knows, Sheila knows that David is doing this, and as Judge Rovner outlined at the beginning, she had multiple opportunities to go to the police or in other ways to protect the minor children, and she doesn't. She's actually more focused on what David is doing, so why isn't that at least a rational person could say she's permitted this to happen? She's allowed it to happen? Yeah, she's allowed it to happen. Well, I disagree because we're not talking about a sentencing consideration that the court is looking at. Well, this is the cross-reference. I just gave the exact language, so if you can find that she allowed or permitted it to happen, then the cross-reference applies. You go to 2G2.1, and there you are. Which, of course, I mean, there's actually sort of a harmless error issue in here, too, because she winds up with a sentence at the low end of the guideline range that you wanted to apply. Yes, but as the court has said repeatedly in guideline calculations, the correct calculation from which the court begins is really very significant for the court. But there's still harmless error that can happen. The question becomes, though, if the court understood that the application was inappropriate, would the court have given her a 57-month sentence? And I think that is actually something that would have to be taken up on remand. But I'll stay with the first point, then. I don't see why the district court committed clear error by finding that her offense involved permitting the minor to engage in the described conduct. And our point, Your Honor, is that in order to implicate the cross-reference, there has to be evidence by obviously the government's burden to prove that she in some way assisted in the manufacturing. But that's not what permission means. I beg your pardon? I don't think that's what permit means. Well, that is the issue, Your Honor, is what does permit mean? All of the other words in the applications that we've seen with the cross-reference require some type of action. In this case, even David Geary says that he had to wait for an opportunity to take the pictures. The pictures are taken on two separate occasions, in April and then again in June. Both times this occurs when she is out of the house. There's no question that she is not in some way participating. But she knows that it's happening. Why does she stick the thumb drive behind the mirror for four years? You know, if permitting means something other than causing, that would be an active assistance in the making of the visual depictions, transporting, offering, seeking by notice or advertisement. So permitting is, you know, I know this happened. Go ahead. I'm the guardian of this child. Go ahead. I have nothing to stop. Stop it. Well, there is an indication that she did confront him at one point before the second pictures were taken. And then she takes the pictures away. And then it stops, completely stops. There's no more pictures taken. So obviously her intervention did do something to stop David's behavior. But the point is not whether or not she should have done something or her conduct was wrong by some measure, but whether or not it's appropriate to hold her responsible for actually producing the child pornography. And it's our position that it is not. I do think it's important to talk about the – I'm sorry, Judge Ropener. On the issue of permitting, she did not permit David to physically abuse her son, Zachary. She was able to stop that. She was present. And that's the difference in the testimony. She was present when that occurred. And so according to Zachary, she intervened. Others' letters from the children would indicate that she did intervene at times when she could. He was a very violent and manipulative person who created a great deal of fear in the household. But I do think it's important to talk about the $55,600 in restitution. In the pre-sentence report, when it was indicated that we – there would be – that the probation officer wanted the $55,600 in restitution, we did file objections and we did indicate that we had no justification for that figure. Well, but there's evidence underlying. I wasn't sure what your argument was because, first of all, it's joined in several liability. So he's responsible for it, too. Secondly, there's a lot of evidence nailing down where that number comes from about cost of mental health and so on. He relies in part on evidence from David's proceeding, but there's nothing wrong with that. Well, it's entirely in David's proceeding because it's not even mentioned. Even though there were objections and we were asked for verification of where these figures were coming from, we had a lengthy evidentiary hearing, nothing was presented by the government. The restitution was not even mentioned by the government until the concluding moments of the sentencing when the court imposed it, as we had already objected to that figure. The government in their brief suggests that there was some information submitted to the probation officer. There's nothing in the record to indicate that. And I would suggest that the court look at docket entry 82 because the probation officer, I believe, filed information on restitution. It's all related to another alleged victim that was among the unidentified pictures at the time of sentencing. I believe Pia is the name of that individual. However, the government did not seek restitution in the end for Pia. So there was absolutely nothing in Sheila Geary's record to show why she was responsible for $55,600 in restitution. So may I preserve the remainder? Yes, you may. That's fine. Mr. Handel. Good afternoon, Your Honors, and may it please the Court, Josh Handel for the United States. The district court's application of the cross-reference in this case implicates two questions. First, the factual question, whether the court permissibly determined that Ms. Geary knew her husband planned to take explicit photographs of their youngest daughter, MF2, that she had the capacity to prevent him from doing so, and that instead she expressly consented to his plan. Second, the legal question. Is it express consent or acquiescence? Where is permission? Well, as we pointed out on page 31 of our brief, Your Honor, Ms. Geary's consent here was both expressed in the form of a positive response when Mr. Geary had discussed his plan with her. It was also implied in the form of her admitted failure to intervene or even to discourage her husband when she learned what he had in mind. So either way you want to go. That failure to intervene, that acquiescence, would be enough in your view to satisfy the permit? Absolutely, Your Honor. I think that that's very clear under the dictionary definition of permitting. I think that's clear under the elements of an offense under 18 U.S.C. Section 2250.1b. And I don't ‑‑ I'm not sure whether Ms. Geary has actually made an argument specifically as to whether failure to intervene always falls short of permitting, but we would certainly say that you look at a dictionary. There is expressed permission. There is implied permission. Both are present here. And just getting back to sort of the legal bounds of the permitting component, I'm happy to answer any questions the court has about the evidentiary basis for the district court's factual findings, but I'd like to focus on the de novo inquiry here. As I mentioned, the dictionary definition of permitting encompasses consent that is either made expressed through words or implied through a course of conduct. We also have, helping us sort of flesh out what the limitations are on permitting, the elements of an offense under 18 U.S.C. 2250.1b, one of the statutory analogs to the cross‑referenced guideline 2G2.1. So can I just say, as I understand part of Ms. Geary's argument, is that it was, in fact, as Ms. Conner said, an abusive household. Sounds terribly dysfunctional, in fact. But that she was sufficiently coerced and intimidated by her husband that she wasn't really capable of permitting or not permitting. She was just surviving herself and not challenging him. Correct, Your Honor. That is the exact argument that she presented to the district court. The district court rejected it as a factual matter, not as a legal matter. The district court never said something like there's no duress defense to permission or something like that. We've acknowledged in our brief that we think control is one aspect of permission that courts can and should look to. And I think that control would capture a lot of that. But getting specifically to what the district court found as a matter of fact on that point, it pointed out that Ms. Geary had called the police on a number of occasions to protect herself from her husband's physical abuse, but that she hadn't taken that same step to protect her children from his sexual predation, despite being in possession of quite damning evidence against him in the form of his stash of child pornography, which she took and held onto as a trump card. In her words, I think the quote was, in case the shit hits the fan and she needed proof, with apologies to the court's overtaxed swear jar. So I think that we have the district court's factual findings on this. It very clearly considered her spousal abuse or abuse of household defense, and it just was not convinced that the degree of physical duress there was sufficient to overcome her will or to overcome her control. And I think that that's verified by the fact that she did ultimately confront her husband and kick him out of the house and go to the police, albeit four and a half years too late, and only after she found out that he had also molested their middle daughter, MF1. The fact that she was able to do that at that point suggests that she was not laboring under some sort of paralyzing fear for her life or for the lives of her children. Either that or she had somehow overcome it. I mean, it seems interesting to extrapolate for the entire four-year period. Sometimes people do muster up the courage to do something after a while. That's absolutely right, Your Honor, and I don't know that it would have been clear error for the district court to have gone the other way on that, right, and for the district court to say, look, we do have a lot of evidence in this record that David Geary is a monster. He's a horrible person. The government certainly did not contest that at the sentencing hearing, and the district court might have said after listening to Ms. Geary's elocution and listening to Mr. Geary's statements that this was the sort of situation where Ms. Geary did not have effective control that would have charged her with the kind of mandate that the law imposes on parents and custodial guardians to prevent this kind of conduct from occurring. But the district court didn't make those findings. It made the opposite findings, and I certainly don't think there's anything on this record where we can say that that was clearly erroneous. Unless the court has further questions on the sentencing, I would like to briefly address restitution. So as a threshold matter, there's a little bit of a disagreement here about which arguments were preserved in the district court. I understand Ms. Geary to have raised two arguments at various points below, and I just want to go through this because I think the timeline is important here. First, in her objections to the PSR, she asserted that she had not seen the documents that the government had offered in support of the loss calculation for MF2 during Mr. Geary's sentencing proceedings. The government then emailed that documentation to the probation office alongside its response to her objections, and Ms. Geary did not renew that complaint at either of her own sentencing hearings. So she got access to them when you emailed them to the probation department? Chief Judge Wood, I was not the trial prosecutor in this case, so my representations to the court are based on things that have been represented to me. I agree with my friend that the record does not conclusively demonstrate whether or when Ms. Geary's counsel received access to these documents. The trial prosecutor's best recollection is that she was provided with this document before the second sentencing hearing. We've pointed out in our brief that she didn't mention not having these documents at either of the sentencing hearings and in her supplemental sentence. And I assume the PSR is clear that this is the amount of restitution that's being recommended? That's correct, Your Honor, yes. And, again, in her supplemental sentencing memorandum that she filed between the two sentencing hearings, she shifted course entirely on the restitution argument, no longer made any mention of not having access to this documentation and then made the argument that she should be categorically exempted from any restitution, notwithstanding this statutory mandate here because her conduct actually protected victims of child pornography rather than harming them. And I would also point out that we don't see anywhere in her appellate brief that she flatly states that she did not receive this documentation. So it was our understanding that by providing that documentation alongside our responses to her objections, we had cured whatever deficiency there was in the record. And then just to kind of the broader point about the district court not adequately explaining its exercise of discretion on the record here with respect to restitution, that's a concern that could have been easily rectified if Ms. Geary had objected any of the four times the district court pronounced its restitution determination on the record at her second sentencing hearing. I would argue that her failure to do so constitutes a forfeiture of the objection. Of course, there's a practical matter. She'll have to pay the whole thing. He's going to be in prison. Yes, Your Honor. I mean, as a very practical matter, I don't think we're really anticipating getting a lot of restitution anyway, but I think that, you know, this is, yes, that is generally how joint and several liability works where one party is incarcerated. I would point out, though, that there's no law of this circuit or of the Supreme Court saying that joint and several liability is categorically erroneous or anything like that. In fact, if you don't have any concerns about that. No, it's on these facts. I mean, the question is, is it not reflective of what she ought to pay in restitution? Sure, and I would just argue that here it's very clear that the district court viewed both David Geary and Sheila Geary as proximate but forecauses of MF2's trauma, and when you have two proximate but forecauses of the trauma, joint and several liability is appropriate under this court's analogous law in the tort law context and the Supreme Court's decision in Paroline v. United States. So unless the court has further questions, I'll rest on my brief and respectfully request that you affirm the judgment below. Thank you. All right. Thank you. I think you have about a minute, Ms. Conner. I'll give you a minute. I take great issue with the government at this point relying on something supposedly submitted to the probation office that never made it into the record and that the government never discussed during an entire three- to four-hour evidentiary hearing when there was an objection on that issue. I think today in oral argument the government has expounded on that further in terms of the timing of when that was sent, and that simply is not reflected in the record. I do think it's important to look at docket entry number 82 because clearly the probation office submitted documents that were available under seal to the parties in which it was relying on for purposes of restitution. There is nothing in that to talk about the $55,600 that was imposed. And as an outside representation, as soon as we received the information on restitution, I contacted Thea's lawyer, and that's probably one of the reasons that they actually withdrew their request for restitution. But when an objection is filed and the government is given three hours to present their evidence, does not talk once about restitution, then we go through another hearing, and then at the end the court imposes restitution after the defense has renewed all their previous objections. It's very unfair to suggest that there's a waiver of that issue. Thank you. All right. Well, thank you very much, and we appreciate very much your taking the appointment for the court. It's a great help. Thank you as well to the government. We will take the case under advisement.